## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

CHARLES HICKS #246241,     )
                         )
     **Plaintiff,**        )
                         )
**vs.**                    )  NO. 2:06-cv-1134-MHT
                         )
**ALABAMA DEPT. OF CORRECTIONS,)**
**et al.,**                  )
                         )
     **Defendants.**     )

## SPECIAL REPORT AND ANSWER

COME NOW Defendants Commissioner Richard Allen and Warden John Cummins, by and through the undersigned counsel in the above-styled action, and file their Special Report and Answer pursuant to the January 10, 2007 of this Honorable Court. Defendants state as follow:

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he has been denied access to the courts.

## DEFENDANTS

1.    Richard Allen, Commissioner
      Alabama Department of Corrections
      P.O. Box 301501
      Montgomery, AL 36130

2.    John Cummins, Warden II
      Bullock Correctional Facility
      P.O. Box 5107
      Union Springs, AL 36089-5107

## DEFENSES

Defendants assert the following defenses to Plaintiff's claims:

1. Defendants deny each and every material allegation contained in Plaintiff's Complaint and demand strict proof thereof.

2. Defendants plead not guilty to the charges in Plaintiff's Complaint.

3. Plaintiff's complaint fails to state a claim upon which relief can be granted.

4. Plaintiff is not entitled to any of the relief requested.

5. Defendants plead the defense of qualified immunity and aver that any purported action taken by any of them was reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by Plaintiff.

6. Defendants are entitled to qualified immunity and aver it is clear from the face of the complaint that Plaintiff has not alleged specific facts indicating that any Defendant violated any clearly established constitutional right.

7. Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

8. The allegations contained in Plaintiff's Complaint against Defendants, fails to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. *See Oladeinde v. City of Birmingham*, 963 F. 2d 1481, 1485 (11th Cir. 1992); *Arnold v. Board of Educ. of Escambia County, Ala.*, 880 F. 2d 305, 309 (11th Cir. 1989).

9. Defendants plead all applicable immunities, including but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

10. Defendants were at all times acting under the color of state law and therefore, they are each entitled to substantive immunity.

11. Defendants plead the general defense.

12. This Court lacks subject matter jurisdiction due to the fact that even if Plaintiff's allegations should be proven, the allegations against these Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights.

13. All claims of Plaintiff against these Defendants in their official capacity are barred by the Eleventh Amendment to the United States Constitution.

14. Defendants plead the affirmative defense that Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render them liable to Plaintiff.

15. Defendants plead the affirmative defense that Plaintiff has failed to mitigate his own damages.

16. Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. §1997e (a) and as such these claims should be dismissed.

17. Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against any of them and that any such award would violate the United States Constitution.

18. Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e) (c).

19. Plaintiff's claims are moot.

20. Defendants reserve the right to raise additional defenses.

## DISCLOSURES

In accordance with the January 10, 2007 Special Report Order, Defendants submit the following initial disclosures:

A.  Attached affidavits of:

    1.       John Cummins, Warden II

    2.       Vivian Langford, Sergeant

B. The following persons may have personal knowledge of the facts relevant to the claims asserted by Plaintiff or the defenses asserted by Defendants:

    John Cummins, Warden II

    Vivian Langford, Sergeant

    Kim Thomas, General Counsel

    Charles Hicks, Plaintiff

C. Clear and legible copies of the documents relevant to claims or defenses asserted in the action are as follows:

    3.       Inmate Summary Data

## STATEMENT OF THE FACTS

Plaintiff is an inmate within the Alabama Department of Corrections.  He is currently confined at Frank Lee Youth Center in Deatsville, Alabama.  Plaintiff is serving a 10-year term for three (3) convictions of Theft of Property I. (Ex. 3)

Plaintiff alleges that he has been denied access to the courts.  This allegation is false.

Inmates at Frank Lee Youth Center were escorted to other law libraries when they requested access to a law library. (Ex. 1)  Once Lexis Nexis was implemented at Frank Lee, the practice of escorting inmates to other facilities ceased. (Ex. 1)  Lexis Nexis provides legal material in a digital format that is updated quarterly. (Ex. 2)

In December, 2006, Plaintiff submitted a request to go to the Staton Correctional Facility Law Library. (Ex. 2) Sgt. Langford informed Plaintiff that he could utilize Lexis Nexis at Frank Lee. (Ex. 2)  Plaintiff responded that there was an inmate at Staton "that could work on his case for him (Hicks)." (Ex. 2)  Plaintiff's request was denied based upon Administrative Regulation 214 that states that inmate law library clerks are not to pretend to be licensed attorneys or in any way appear to be engaged in the unauthorized practice of law. (Ex. 2)   Plaintiff repeated his request several times, which were subsequently denied. (Ex. 2)

The library has set hours, but allowances are made for additional time, if needed. (Ex. 2)

Inmates are issued Legal Kits upon request. (Ex. 2)  The kits are issued weekly. (Ex. 2)  Writing instruments are issued upon request. (Ex. 2)  Copies are made at 50¢ per page. (Ex. 2)  Plaintiff has consistently received two (2) Legal Kits per week. (Ex. 2)

## **ARGUMENT**

### I.    Immunities

As is evident from Plaintiff's complaint, his claims are directed principally toward actions allegedly perpetrated by officials of the Alabama Department of Corrections (ADOC).  There are no claims directed specifically toward Defendant Commissioner Allen.

"'It is well established in [the Eleventh] Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.'" Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). Thus, the Commissioner cannot be subjected to suit merely because other state officials or agents who may ultimately answer to them have allegedly violated the law.

There is a requirement for "heightened pleading" that attends section 1983 claims, especially those for which qualified immunity is raised as a defense. See Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003). As the Eleventh Circuit has held, "[i]n civil rights and conspiracy actions, . . . more than mere conclusory notice pleading is required" and "a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984). The courts "'generally accord . . . official conduct a presumption of legitimacy.'" Gonzalez, 325 F.3d at 1235 (quoting United States Dep't of State v. Ray, 502 U.S. 164, 179 (1991)).

Defendants are officials or agencies of the State of Alabama, Plaintiff's official-capacity claims must be considered to be against the State itself. This, in turn, affords the Defendants Eleventh Amendment immunity; the State need not actually be named as a party for such immunity to be available. See Williams v. Bennett, 689 F.2d 1370, 1376 (11th Cir. 1982), cert. denied 464 U.S. 932 (1983). Thus, Plaintiff's federal claims for damages against the Defendants in their official capacities are barred by Eleventh Amendment immunity and should be dismissed.

Plaintiff's state-law claims against the Defendants in their official capacities are similarly barred by the State's sovereign immunity, as is bestowed by Article I, Section 14 of the Alabama Constitution of 1901.  In Haley v. Barbour County, the Alabama Supreme Court held that "Section 14 prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State." 885 So. 2d 783, 788 (Ala. 2004) (citing Lyons v. River Road Constr., Inc., 858 So. 2d 257, 261 (Ala. 2003), and Mitchell v. Davis, 598 So. 2d 801, 806 (Ala. 1992)).  Thus, the Plaintiff's claims under state law for damages against the Defendants in their official capacities are barred by sovereign immunity and should be dismissed.

The Defendants are entitled to qualified immunity regarding the individual-capacity federal claims stated in Plaintiff's complaint.  The basic test for qualified immunity was stated in Harlow v. Fitzgerald, 457 U.S. 800 (1982):

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known.

457 U.S. at 818.  Qualified immunity bars claims "so long as [the defendant's] actions could reasonably have been thought consistent with the rights they are alleged to have violated."  Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Further, qualified immunity is not just a bar to damages; it is a bar to suit.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Even allegations of animus by a state actor against a plaintiff are not sufficient to overcome the presumption of qualified immunity.  See Hansen v. Soldenwagner, 19 F.3d 573, 578 (11th Cir. 1994) (stating that "[f]or qualified immunity purposes, the subjective motivation of the defendant-official is immaterial").  Also, in

Gardner v. Howard, 109 F.3d 427, 429-430 (8th Cir. 1997), the Eighth Circuit held "[q]ualified immunity shields government officials from §1983 damage liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." (Citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)).

The justification for qualified immunity is that such immunity is necessary in order for the government to effectively function. If not for the protections immunity provides, state officials could be subject to suit for every move they make. This action would have a serious chilling effect on the ability of such officials to do their jobs. In sum, state officials should be allowed to exercise discretion in the performance of their duties without fear of a lawsuit around every corner. Mitchell, 472 U.S. at 525-26; see also Hunter v. Bryant, 502 U.S. 224, 229 (1991); Burrell v. Bd. of Trustees of Ga. Military College, 970 F.2d 785, 794 (11th Cir. 1992), cert. denied, 507 U.S. 1018 (1983).

In the present case, the Defendants deny that they violated "a clearly established right" of the Plaintiff. As such, it is incumbent upon Plaintiff to show that the Defendants violated "clearly established constitutional law" in their dealings with Plaintiff. See Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983) (holding that it is a plaintiff's burden to rebut a defendant's qualified immunity defense). This, however, has not been demonstrated by Plaintiff. He has alleged no constitutional injury perpetrated by any of the Defendants. Likewise, Plaintiff cannot contend that the Governor or the Commissioner vicariously harmed him because of the alleged actions of other state officials or agents. See Cottone, 326 F.3d at 1360. Because Plaintiff cannot demonstrate that any of his clearly established constitutional rights have been infringed, qualified

immunity bars his attempt to impose liability on the Defendants. Therefore, Plaintiff's federal claims against the Defendants in their individual capacities should be dismissed.

Plaintiff asserts his allegations against the Defendants in both their individual and official capacities. As was stated previously, Defendants are entitled to sovereign immunity to the extent Plaintiff has sued them in their official capacities for damages under state law. However, just as the Defendants in their individual capacities are entitled to qualified immunity under federal law, they are protected by State-agent immunity under state law.

In Ex parte Butts, 775 So. 2d 173 (Ala. 2000), the Alabama Supreme Court adopted a test that was first set out in its plurality opinion in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000), for evaluating whether a state official sued in his individual capacity is entitled to immunity as an agent of the State. Though distinct from a qualified immunity analysis under federal law, State-agent immunity similarly shields state officials from liability while they are discharging their duties in good faith. In this case, the Defendants' alleged actions clearly fall within the protection of State-agent immunity under Alabama law. See Butts, 775 So. 2d at 177-78 ("A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners").

The Defendants can only be divested of State-agent immunity upon a showing that they acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of law. Butts, 775 So. 2d at 177-78; Ryan v. Hayes, 831 So. 2d 21, 28 (Ala. 2002). Moreover, it is the Plaintiff's burden to make such a showing.

Ryan, 831 So. 2d at 27-28; see also Giambrone v. Douglas, 874 So. 2d 1046, 1052 (Ala. 2003) (holding that, once it is shown that a state agent was undertaking a discretionary function, the burden shifts to the plaintiff to disprove the defendant's entitlement to immunity).

Plaintiff simply cannot carry the burden of proof in this case. As argued herein, the Plaintiff has not bothered to state with any particularity what all of the Defendants did to become defendants in this lawsuit. Consequently, it is inconceivable that Plaintiff could marshal the evidence needed to defeat State-agent immunity.

II.    Duties

The courts have continuously recognized that the operation of correctional institutions are, at best, a difficult assignment and that correctional officials must be given broad range in discretion and latitude in which to carry out their duties. See Hewitt v. Helms, 459 U.S. 460 (1983). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979), Sims v. Mashburn, 25 F. 3d 980 (11th Cir. 1994).

In Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998), the Eleventh Circuit Court of Appeals held that "the fundamental constitutional right of access to the courts requires prison authorities to ... provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." Quoting Bounds v. Smith, 430 U.S. 817, 828 (1977). "While prison officials must provide prisoners with direct legal assistance or access to a law library, they are not required to provide both, so long as the

constitutional requirement of 'meaningful access' is met." Ex parte Thigpen, 513 So.2d
101 (Ala. Crim. App. 1987); quoting Bounds, 430 U.S. at 817; other citations omitted.
The Wilson Court recognized that the United States Supreme Court "clarified that
prisoners' contentions of deprivations of access to courts must show actual injury as a
'constitutional prerequisite'." Wilson, 163 F.3d at 1290; Lewis v. Casey, 518 U.S. 343,
351 (1996); Weaver v. Brenner, 40 F.3d 527, 533 (2nd Cir. 1994). The Wilson Court
stated:

> While *Bounds* guarantees the right of access to the courts under the
> Fourteenth Amendment, prisoners have no inherent or independent right
> of access to a law library or to legal assistance. *See Lewis*, 518 U.S. at
> 349-51, 116 S.Ct. at 2179-80. Instead, they must show actual injury in the
> pursuit of specific types of nonfrivolous cases: direct or collateral attacks
> on sentences and challenges to conditions of confinement. *Id*. at 355-57,
> 116 S.Ct. at 2182. "Impairment of any *other* litigating capacity is simply
> on of the incidental (and perfectly constitutional) consequences of
> conviction and incarceration." *Id*. at 355, 116 S.Ct. at 2182.

In the case at bar, Petitioner has been allowed access to a law library. He has not
shown how, if at all, he has been injured. Therefore, this case should be dismissed.

Wherefore these premises considered, the Defendants pray that this Honorable
Court will find that the Plaintiff is not entitled to any relief and this complaint should be
dismissed.

Respectfully submitted,


/s/TARA S. KNEE_____
TARA S. KNEE
ASSISTANT ATTORNEY GENERAL
ASSISSTANT GENERAL COUNSEL

**ADDRESS OF COUNSEL:**
Alabama Department of Corrections
Legal Division
Post Office Box 301501
Montgomery, Alabama 36130-1501
(334) 353-3885

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of February, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following (or by U.S. Mail to the non-CM-ECF participants):

Inmate Charles Hicks
AIS #246241
Frank Lee Youth Center
P.O. Box 220410
Deatsville, AL 36022

/s/Tara S. Knee
Tara S. Knee
Assistant Attorney General
Assistant General Counsel

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

CHARLES HICKS, #246241,    )
                                    )
        Plaintiff,       )
                                      )
      v.                )    CIVIL ACTION NO. 2:06-CV-1134-MHT
                                      )
ALABAMA DEPT. OF CORRECTIONS, )
et al.,                        )
                                      )
        Defendants.    )
                                      )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared John Cummins II, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is John Cummins II, and I am presently employed as a Correctional Warden III, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, Alabama 36089. I am over twenty-one (21) years of age.

Prior to the implementation of the Lexis Nexis System, all inmates assigned to Frank Lee Youth Center, requesting access to a law library, were escorted to other facilities. Once the Lexis Nexis System was implemented, this practice ceased, as all law library resources were contained within this program.



DEFENDANT'S EXHIBIT

Page 2

Inmate Charles Hicks, #246241, nor any other inmate at Frank Lee Youth Center, has been denied access to the courts.

_John Cummins II_
John Cummins II

STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal on this the _____29th_____ day of January 2007.

_Justine B. Reason_
NOTARY PUBLIC

My Commission Expires: _2/24/2009_

SEAL

# AFFIDAVIT

Vivian Langford

_____
(Affiant)

CIVIL ACTION NO.2:06-CV-1134-MHT
CIVIL ACTON NO.2:07-CV-64-WKW

_____
(Case #'s)

## STATE OF ALABAMA

## County of Elmore

I, Vivian Langford have prepared this affidavit in response to civil actions filed by Inmate Charles Hicks AIS 246241. I am assigned to Frank Lee Youth Center in which one of my responsibilities is to supervise the Inmate Library. My response is as follows:

(1) Frank Lee Youth Center inmates are provided access to the courts via Lexis Nexis, the Alabama Department of Corrections contracted provider of legal material. Lexis Nexis provides the legal material in a digital format. Lexis Nexis also sends updates in digital format (software) to Frank Lee Youth Center quarterly. As soon as these quarterly updates are received, I load the software containing the updates onto the Law Library computer **(see attached dates of all updates at FLYC since the arrival of Lexis Nexis)**.

(2) In December 2006, Inmate Charles Hicks did submit an inmate request slip to me requesting to go to Staton Correctional Facility Law Library. I verbally responded to the request slip, speaking to Inmate Hicks and explaining to him (Hicks) that the Lexis Nexis program is available and that he may use it. Inmate Hicks stated to me that he (Hicks) needed to visit Staton Correctional Facility Law Library because there is an inmate assigned there that could work on his case for him (Hicks). Inmate Hicks stated that the inmate law clerks assigned at Frank Lee Youth Center did not know how to work on his (Hicks) case. I informed Inmate Hicks that I could not authorize him (Hicks) to go to Staton Correctional Facility for the purpose of allowing an inmate to do legal work for him. I also advised Inmate Hicks that inmates assigned to the library are prohibited from practicing law. When assigning law clerks, I specifically screen for inmates with computer skills and legal experience. Those clerks assist inmates in maneuvering through the Lexis Nexis programs to conduct searches of the legal material. The clerks also issue legal forms to inmates when requested. These inmates are instructed in accordance with Administrative Regulation #214 Law Library Supervisors V. G.9, that they are not to pretend to be licensed attorneys or any way appear to be engaged in the unauthorized practice of law **(see attached excerpt from AR 214).**

After speaking with Inmate Hicks, he still continued to send inmate request slips to me on a daily basis requesting to go to Staton Correctional Facility Law Library so that another inmate can work on his case. I spoke with Inmate Hicks again reiterating that I could not authorize him to go to Staton Correctional Facility Law Library for the aforementioned purpose and I instructed Inmate Hicks to send an inmate request slip to Warden John Cummins for approval. To my knowledge Inmate Hicks did not seek permission from Warden Cummins because he continued to send the inmate request slips to me.

(3) Frank Lee Youth Center is limited on space, whereas, the library and law library computer station is housed in the same room. Inmates at Frank Lee Youth center are able to access the law library computer during open hours, Monday – Friday 8:00 a.m. – 8:00 p.m. and on Saturday and Sunday 1:00 p.m. – 8:00 p.m.; however, special hours from 8:00 a.m. -2:00 p.m. Monday – Friday is reserved for Law Library use only. Inmates who need extended time to use the Lexis Nexis program, who work or attend school may request to use the law computer on Saturday and Sunday mornings in addition to be stopped-


DEFENDANT'S EXHIBIT

up from work/school and scheduled usage times during the week to ensure they are provided access to the legal material (**see attached Frank Lee Youth Center Library SOP and operating schedule**).

(4) Frank Lee does not provide carbon paper or a typewriter as it is not a requirement; however, inmates may receive copies if requested at a cost of .50 per page with approval per Frank Lee Youth Center SOP. Frank Lee Youth Center does issue upon request Legal Kits to inmates that consist of four sheets of paper and two envelopes. These legal kits are issued on a weekly basis. Writing instruments are also issued upon request. Inmate Hicks has consistently received two Legal Kits per week (**see attached sheet where Inmate Hicks signed for Legal Kits).**

_____
(Signature of Affiant)

P.O. Box 220410
_____
(Address)

Deatsville, AL 36022
_____
(City, State, Zip Code)

Sworn to and subscribed before me this 29th day of January , 2007.

_____
(Notary Public)

-Seal-

My Commission Expires 1/9/09

**Lexis Nexis Update Log**

| Software Release Date | Signature |
|---|---|
| 9581 Release 1  1/05 | V. Jones |
| 9581 Release 2  4/05 | V. |
| 9581 Release 3  4/05 | V. |
| 9581 Release 4  2/06 | V. |
| 9581 Release 5  mar 06 | V. |
| 9581 Release 6  7/06 | Sgt. |
| 9581 Release 7  10-06 | V. |
| 9581 Release 8  Dec 06 | V. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |




# State of Alabama
# Alabama Department of Corrections

Research and Planning
P. O. Box 301501
Montgomery, AL 36130-1501

BOB RILEY
GOVERNOR

Donal Campbell
COMMISSIONER

June 29, 2004

ADMINISTRATIVE REGULATION                    OPR: OPERATIONS
NUMBER                    214

## LAW LIBRARY SUPERVISORS

### I.    GENERAL

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for those officers assigned to supervise the institutional law library.

### II.    POLICY

The ADOC shall provide legal resource libraries and allow all inmates access to the materials available.

### III.    DEFINITION(S) AND ACRONYM(S)

A.    Inmate Law Library Clerks:  Inmates that are assigned to assist the law library supervisor.

B.    Commissioners designee:   A person designated by the Commissioner to coordinate inmate legal matters that cannot be resolved at the institutional level.

C.    ICF (Institutional Contingency Fund):  A fund designed to provide certain materials and services for the benefit and welfare of the inmate population, not otherwise provided with appropriated funds.

### IV.    RESPONSIBILITIES

Wardens/designees are responsible for the operation and maintenance of the library.

### V.    PROCEDURES

A.    Each institution shall make legal materials available in a suitable location for access by inmates assigned to that institution.

1.    The Library Supervisor at the institution shall monitor the use of these materials.

2.    Institutionally owned legal resource/reference materials shall be maintained only within the library, except for those accessed to inmates confined in segregation units or who do not have direct access to a centralized law library because of their assignment.

B.    Law library access shall be open to all inmates housed in general population of the institution.

C.    Inmates in segregation or otherwise restricted will be:

    1.    Allowed no physical access to the law library.

    2.    Provided a complete listing of materials available in the law library.

    3.    Allowed to request items from the law library and the request should be filled in a timely manner.

D.    The law library at all institutions shall be open a minimum of 20 hours per week.

    1.    Days and times for library use will be provided as long as security needs are maintained.

    2.    Law library services shall be provided during work hours to provide access to the greatest number of inmates that does not interfere with work assignments or other programs.

E.    The law library shall provide, as prescribed by legal, writing instruments, plain paper, and envelopes for inmate use in preparing legal correspondence and documents.

F.    Materials and equipment, as approved by the ADOC Legal Division, will be provided through the ICF of the respective institution.

G.    The Warden's designee will coordinate and supervise the law library services in the institution as follows:

    1.    The law library collections are maintained orderly and current.

    2.    Inmate law library clerks are supervised.

    3.    All materials, such as but not limited to pocket parts, advance sheets, and volumes, are logged.

    4.    Daily logs of the use of the law library, and those denied direct access, is maintained.

    5.    Law library hours are posted in inmate living areas.

    6.    All legal materials are inventoried and an inventory report is submitted to

AR214 – June 29, 2004

the Commissioner's designee on or before the 10th day of September.

7. Ensure the availability of forms listed in Annex A (Institutional Law Library and Court Forms), submitting order requests as necessary to the institutional business manager.

8. Coordinate requests for legal materials with the Commissioner's designee.

9. Instruct inmate law library clerks that they are not to pretend to be licensed attorneys or in any way appear to be engaged in the unauthorized practice of law. Inmate law clerks should also be instructed that they **SHALL NOT** charge for legal services.

## VI.  DISPOSITION

Any forms used will be disposed of and retained according to the Departmental Records Disposition Authority (RDA).

## VII.  FORMS

There are no forms prescribed in this regulation.

## VIII.  SUPERCEDES

This regulation supercedes AR 214, dated August 18, 1992.

## IX.  PERFORMANCE

ACA Standards: 3-4256 and 3-4264

**ANNEX(S):**

Annex A, Institutional Law Library and Court Forms

Donal Campbell, Commissioner

AR214 – June 29, 2004

# INSTITUTIONAL LAW LIBRARY AND COURT FORMS

## LAW LIBRARY FORMS

| FORM NUMBER | FORM NAME |
|---|---|
| N942L | Material Received Log |
| N943L | Access to Law Library |
| N944L | Access to Legal Material |
| N946L | Photocopy Log Law Library |
| N947L | Notary Log |
| N949L | Law Library Sign-In Sheet |
| N950L | Law Library Inventory Sheet |

## COURT FORMS

| FORM NUMBER | FORM NAME |
|---|---|
| N937 | (42 USC 1983) U.S. District Court Northern District |
| N938 | (42 USC 1983) Civil Rights (Complaint) Middle District |
| N939 | (42 USC 1983) U.S. District Court Southern District (Motion to Proceed Without Prepayment of Fees and Costs Included with this form) |
| N941 | Petition for Relief from Conviction or Sentence (Pursuant to Rule 32) |
| N954 | (28 USC 2254) U.S. District Court Northern District |
| N955 | (28 USC 2254) U.S. District Court Mobile District |
| N956 | (28 USC 2254) U.S. District Court Southern District |
| N957 | Affidavit of Substantial Hardship Order (Form C10, Revised 6/88) |

# LIBRARY WORKER SCHEDULE

| | MON | TUE | WED | THUR | FRI | SAT | SUN |
|---|---|---|---|---|---|---|---|
| Daniel, Frederick | x | 8am-2pm | 8am-2pm | 8am-2pm | 8am-2pm | 1pm-8pm | X |
| Hailey, Stanley | 2pm-8pm | x | 8am-2pm | 2pm-8pm | 2pm-8pm | x | 1pm-8pm |
| White, Paul | 8am-2pm | 2pm –8pm | 2pm –8pm | x | 2pm-8pm | x | 1pm-8pm |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*Monday – Friday 8:00 a.m. – 2:00 p.m. Law Library ONLY
*Red denotes workers that are required to be in library during those hours.





*State of Alabama*

*Alabama Department of Corrections*

Frank Lee Youth Center
5305 Ingram Rd.
P. O. Box 220410
Deatsville, AL 36091

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

**STANDARD OPERATING
PROCEDURE    E-7**

**OPR:  Captain**

**Law Library Procedure**

**I.     GENERAL**

This Alabama Department of Corrections (ADOC) Institutional Standard
Operating Procedure (SOP) establishes the responsibilities, policies and
procedures for the Inmate Law Library at Frank Lee Youth Center.

**II.    POLICY**

It is the Policy of Frank Lee Youth Center to provide inmates access to Legal
Resource Libraries by maintaining and making available to the general inmate
population a computer system with applicable software to assist with legal cases.
Where needed, Frank Lee Youth Center will make arrangements with other
ADOC institutions to assist in providing adequate access to the courts for Frank
Lee Youth Center inmates.

**III.   DEFINITION(S) AND ACRONYM(S)**

    A.    <u>Law Library Clerks:</u> Inmates assigned to assist the Administrative Sergeant
        who manages the Law Library functions at Frank Lee Youth Center.

    B.    <u>Legal Kit:</u> Four (4) sheets of plain paper and two (2) plain envelopes.  A pencil
        may be issued upon request.

**IV.   RESPONSIBILITIES**

    A.    The Administrative Sergeant is responsible for the Management of the
        Law Library Computer Program (Lexis Nexis) usage at Frank Lee Youth
        Center.

FLYC SOP E-7, continued

    B.    Shift Commanders are responsible for ensuring the inmates have access to the Law Library at the appropriate times.

    C.    All security employees are responsible for reading and adhering to the Policies and Procedures depicted in this SOP.

## V.    PROCEDURES

    A.    The Procedures & Rules outlined in SOP E-7 Form #1- "Law Library Procedures and Rules" must be followed by inmates using or desiring to use the Lexis Nexis Computerized Law Library System.

    B.    SOP E-7 Form #1 – "Law Library Procedures and Rules" will be posted on the inmate bulletin board located at the chow hall entrance and in the library.

    C.    Any incident of abuse, misuse, damage, or theft will be reported to a supervisor and documented on an incident report.

    D.    The Law Library Computer will be accessible to inmates at least 20 hours per week.

    E.    Law Library Computer sign-in Forms (SOP E-7 Form #2) reflecting computer usage will be maintained by the Administrative Sergeant.

    F.    The Administrative Sergeant will:

        1.   Receive all inmate requests to use Lexis Nexis.

        2.   Provide the Shift Officer and Law Library Clerk with appointments for each inmate to use the Law Library Computer Program.

        3.   Provide copies of legal material from Lexis Nexis to an inmate once the Business Office approves the request.

## VI.    DISPOSITION

Retention and/or disposal of any form associated with this SOP will be handled via the Records Disposition Authority (RDA).

FLYC SOP E-7, continued

VII.   **FORMS**

      SOP E-7 Form #1 -- "Law Library Procedures and Rules"
      SOP E-7 Form #2 -- "Law Library Computer Sign-in Form"


VIII.   **SUPERCEDES**

      This SOP supercedes Frank Lee Youth Center SOP E-7 issued on January 21, 2003.


IX.   **PERFORMANCE**

      ADOC AR 214 -- "Law Library Supervisors"
      ADOC AR 412 -- "Institutional Law Libraries"


_____    AUG 29, 2005
**John Cummins II, Warden**           Date


- 3 -

## LAW LIBRARY PROCEDURES AND RULES

1.  Inmates desiring to use the Law Library Computer must submit a request to the Administrative Sergeant by 12:00 noon on Wednesday for the following week.  The week begins on Saturday and ends on Friday.

2.  Inmates scheduled to use the computer will be notified by the Administrative Sergeant as to their approved days and times.  Also, a list of inmates approved to used the Law Library Computer and their corresponding scheduled days and times will be posted in the Law Library and maintained in the Shift Office.

3.  Inmates who use the Law Library computer must complete the "Law Library Computer Sign-in Form", SOP E-7 form #2.  Inmates must sign-in before using the computer and sign-out when finished.  Disciplinary action will be taken against inmates who do not comply with Law Library Procedures and Rules.

4.  Computer usage time will be limited to one (1) hour per sitting, unless otherwise approved.

5.  Inmates preparing Legal Correspondence & Documents may request a Legal Kit from the Administrative Sergeant.

6.  Law Library Hours will be posted in each dorm on the inmate's bulletin board.

7.  Inmates caught in the Law Library who are not authorized (on the schedule) will be charged with rule violation #50 – Being in an unauthorized area.

8.  Law Library and Court forms will be made available in the law library.

9.  Notary services will be made available on an as needed bases through the Administrative Sergeant.

10. Only one inmate at any one time will be allowed to use an assigned computer.  I. D. card is required.  The law library clerk may assist inmates.

11. **No** food, drink or radio is allowed.

12. **No** unnecessary talking, rapping, singing, drumming or beating on tables, desks, walls, etc. when using computers.

1.

SOP E-7 Form #1

13. Inmates will make sure the computer station is neat, clean and orderly upon completion.

14. Inmates will be held responsible for damages due to abuse, misuse, neglect of computers and accessories.

15. An inmate computer clerk will be present at all times to assist with the operation of the computer and to access legal forms.

16. Inmate clerks are not to pretend to be licensed attorneys or to in anyway appear to be engaged in the unauthorized practice of law.

17. Inmate clerks shall not charge for their services.

18. Inmate law clerks primary responsibility is to assist the Administrative Sergeant in keeping the Law Library up in an orderly fashion, keeping it clean, providing assistance to population inmates requesting help in their legal needs, and ensuring that the computers, supplies, etc. are taken care of properly. Clerks shall immediately notify the Administrative Sergeant with any problems encountered in the Law Library.

19. Inmate law clerks shall immediately report to the nearest officer when any inmate takes unauthorized materials from the law library. The clerks will also follow up by reporting this to the Shift Commander and the Administrative Sergeant.

20. Any abuse of the computers will result in disciplinary action.

21. Inmate's wanting to print out items from the computer for their personal use, will be subject to a $.50 charge per page upon approval by the Warden or his designee. Request may be submitted to the Administrative Sergeant.

22. Inmates will be properly dressed at all times.

23. Special consideration, including additional time on the computer, will be given to inmates with pressing legal deadlines.

24. The computer shall only be used to research legal issues using the Lexis Nexis program. No other program use is authorized.

2.

SOP E-7 FORM #1

# LAW LIBRARY COMPUTER SIGN-IN FORM

**Maximum time allowed in one sitting is 1 hour, unless otherwise approved. You will be responsible for any damages caused due to misuse, abuse or neglect of this computer and its accessories. If you need assistance check with the staff or with the computer clerk.**

| DATE | INMATE NAME | AIS NUMBER | BED NUMBER | COMPUTER NUMBER | TIME BEGAN | TIME COMPLETED |
|------|-------------|------------|------------|-----------------|------------|----------------|
|      |             |            |            |                 |            |                |
|      |             |            |            |                 |            |                |
|      |             |            |            |                 |            |                |
|      |             |            |            |                 |            |                |
|      |             |            |            |                 |            |                |
|      |             |            |            |                 |            |                |
|      |             |            |            |                 |            |                |
|      |             |            |            |                 |            |                |
|      |             |            |            |                 |            |                |
|      |             |            |            |                 |            |                |
|      |             |            |            |                 |            |                |
|      |             |            |            |                 |            |                |
|      |             |            |            |                 |            |                |

SOP E-7 FORM #2



Robinson, Deanck  9/8/06

Baker, Sanford  9/8/06
Jimmy Reeden
Charles Hicks  9/27/06
Charles Durial
Cam Lee  ● 11-11-06
Charles Hicks  ② 11/27/06
John Travis  12/6/06  Sent by Mail
Marvin Turn  12/6/06  Sent by Mail
Charles Hicks  12/6/06  Sent by Mail
T Cam Lee  ② 12/11/06
Stanley Hailey  ② 12/19/06
Charles Hicks  2 12/20/06
Jimmy Reeden  ② 12/27/06
Marvin Turner  2 12/27/06
Charles Hicks  12/28/06
Cam Lee  ② 12/31/06
Stanley Hailey  12/29/06
Marvin Turner
Bruce Meadows  2 1-3-07
Benny Joe Roy  2 1-3-07
Charles Hicks  2 1-9-07

2007

| Name | Ais # | Date | (2) # of Kits |
|---|---|---|---|
| 1. Stanley Hartley | 247/91 | 1-12-07 | 2 |
| 2. Marvin Turner | 201945 | 1-12-07 | 2 |
| 3. Alvin Lee | 152056 | 1-16-07 | 2 |
| 4. Stanley Nwako | 216241 | 1-16-07 | 2 |
| 5. Marvin Turner | 201945 | 1-16-07 | 2 |
| 6. Grimes Reeder | 153384 | 1-18-07 | 2 |
| 7. Derrick Hicks | 246241 | 1-23-07 | 2 |
| 7. Beau Meadows | 234450 | 1-24-07 | 2 |
| 9. | | | 2 |
| 10. | | | 2 |
| 11. | | | 2 |
| 12. | | | |
| 13. | | | |
| 14. | | | |
| 15. | | | |
| 16. | | | |
| 17. | | | |
| 18. | | | |
| 19. | | | |
| 20. | | | |
| 21. | | | |
| 22. | | | |
| 23. | | | |

```
                                    DISPLAY INMATE SUMMARY DATA   6 PRODUCTION
 01/FEB/2007    14:38:34     CDSUM    499    L-TARA     CDSUM01    604
--------------------------------------------------------------------------------
AIS: 00246241    INMATE: HICKS, CHARLES                  RACE: B  SEX: M

INST: 012-FRANK LEE YOUTH CENTER          JAIL CR: 0319D DOB: 11/02/1961
SSN: _____ PAR CONS DT: 11/2007  CURR CUST: MIN2  CURR CUST DT:06/01/2006
ALIAS: HAMPTON, GLENN EDWAR               ALIAS: HICKS, CHARLES EDWAR
ADM TP: NEW COMIT FROM CRT W/REV OF P  STATUS: NEW COMIT FROM CRT W/REV OF PR
INIT SENT DT:04/13/2006 ADM DT: 04/13/2006 DEAD TIME: 00Y 00M 00D

                                N                                        TY
COUNTY       SENT DT    CASE   L CRIME                         TERM      PE
JEFFERSON    04/13/2006 001085 Y THEFT OF PROPERTY I           10Y00M00D CS
JEFFERSON    04/13/2006 001086 Y THEFT OF PROPERTY I           10Y00M00D CC
JEFFERSON    04/13/2006 001087 Y THEFT OF PROPERTY I           10Y00M00D CC


                    NO MORE RCDS THIS TYPE AVAIL
INMATE HAS 000DISCIPLINARIES RESULTING IN LOSS OF 000Y00M00D OF GOOD TIME.
INMATE HAS 006TRANSFER RECORDS ON FILE.
INMATE HAS 03 DETAINER/WARRANT RECORDS ON FILE.
 TOTAL  TERM   REV GOOD TIME  MIN REL DT  TOT GOOD TIME  SHORT DATE  LONG DATE
 010Y 00M 00D  000Y 00M 00D   11/20/2008  002Y 00M 00D   11/20/2008  05/23/2015
```



DEFENDANT'S EXHIBIT
3